**Vincent MARINO, Appellant**

v.

**Mario FAVA, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 19, 2006.
Filed Dec. 21, 2006.

---

Thomas J. Michael, Pittsburgh, for appellant.

Thomas J. Lowery, Pittsburgh, for appellee.

BEFORE: STEVENS, TODD, and McCAFFERY, JJ.

OPINION BY TODD, J.:

¶ 1 Vincent Marino appeals the December 6, 2005 order of the Honorable R. Stanton Wettick, Jr. of the Allegheny County Court of Common Pleas granting the summary judgment motion of Appellee Mario Fava. We affirm.

¶ 2 This case concerns the allegedly false statements made by Fava to the police and mental health officials when he applied to have Marino, his nephew, involuntarily committed to a psychiatric institution in 2003. Specifically, on April 4, 2003, Fava called the Pittsburgh police and reported that Marino had pulled a gun on him. Subsequently, at the apparent suggestion of the responding officers, Fava filled out an application to have Marino involuntarily committed to the Western Psychiatric Institute & Clinic of Pittsburgh ("WPIC") pursuant to Section 302 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7302. Fava claimed in the application that Marino had pulled a gun on him and threatened to shoot him, and that Marino had on many occasions exposed his penis to Fava, and threatened to burn down his house. Based on these representations, the County Administrator issued a warrant authorizing Marino to be taken to WPIC for examination and treatment. The physician who examined Marino at the time certified that he was severely mentally disabled and needed a period of treatment not to exceed 120 hours. Marino's treating physician then filed a request with the court that Marino be certified for extended involuntary emergency treatment. On April 8, 2003, a hearing officer conducted a hearing on the matter, where Marino's treating physician

and Fava testified. Consistent with the treating physician's recommendation, the hearing officer recommended that Marino be admitted to WPIC for a period not to exceed 20 days.

¶ 3 On March 15, 2004, Marino filed a *pro se* complaint in arbitration against Fava, which he thereafter amended on several occasions, claiming that Fava had harassed him by calling him on the telephone numerous times, and had defamed and slandered him by reporting to the police that Marino had pulled a gun on him, and otherwise defamed him by what he said in the commitment application and later testified to at the hearing in April 2003. Fava thereafter filed preliminary objections to the complaint, which Judge Wettick granted in part on June 8, 2004, dismissing the harassment claims and the defamation and slander claims arising out of Fava's reporting of the gun incident. Fava then filed a motion for summary judgment on the remaining claims, which Judge Wettick granted on December 6, 2005. This appeal followed, wherein Marino essentially argues that the trial court erred in granting summary judgment in favor of Fava as Fava is not entitled to any immunity from civil liability under the MHPA.

¶ 4 Our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

■ ¶ 5 Marino argues that Fava is not entitled to any immunity from civil liability pursuant to Section 7114 of the MHPA because that section only applies to mental health providers and the like,[1] and even if Fava could be considered a part of that category, he is not entitled to immunity due to his willful misconduct and/or gross negligence. We note, however, that Judge Wettick did not grant summary judgment in favor of Fava based on Fava having any immunity under this section. Rather, Judge Wettick granted summary judgment based on his determination that Fava's statements in the application to commit Marino, and Fava's testimony at the commitment hearing, were absolutely privileged under this Court's decision in *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36 (1991). Following our review of the applicable caselaw, we agree with this assessment.

¶ 6 As we recognized in *Pawlowski,*

---

1. Section 7114 provides in part:

   (a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.
   50 P.S. § 7114.

It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation. The policy behind this principle is manifest:

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests. Likewise, the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings.

\* \* \*

Importantly, the existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse. Moreover, the privilege extends not only to communications made in open court, but also encompasses pleadings and even less formal communications[.]

*Pawlowski*, 403 Pa.Super. at 80–81, 588 A.2d at 41 (1991) (citations omitted); *see also Bochetto v. Gibson*, 580 Pa. 245, 860 A.2d 67 (2004). Based on these principles, we concluded in *Pawlowski* that statements made to law enforcement officials for the purpose of inducing those officials to bring criminal charges against the accused were absolutely privileged. *Paw-*

*lowski*, 403 Pa.Super. at 81–82, 588 A.2d at 41–42.

¶ 7 In this case, as Judge Wettick noted in his opinion of December 6, 2005, Fava was nothing more than a witness in Marino's involuntary commitment proceeding. The statements he made for the purpose of having Marino involuntarily committed are just like the statements made in *Pawlowski* for the purpose of having criminal charges filed. As such, they are absolutely privileged. As we explained above, according absolute privilege to statements made in or preliminary to judicial proceedings aims at ensuring free and uninhibited access to the judicial system. This policy is obviously served by applying the privilege to statements made to mental health officials for the purpose of initiating involuntary commitment proceedings. Although such statements may ultimately prove to be false or maliciously motivated, they are deemed to be absolutely privileged because the policy concerns stated above outweigh the right of the defamation plaintiff to seek redress for alleged harm caused by the statements. *See Pawlowski*, 403 Pa.Super. at 83–84, 588 A.2d at 42.

¶ 8 For all of the foregoing reasons, we agree with Judge Wettick that the statements Fava made in the application to commit Marino, and the statements he later made at the commitment hearing, are absolutely privileged and cannot form the basis for a defamation action against Fava. Accordingly, we affirm Judge Wettick's order granting summary judgment in favor of Fava.

¶ 9 Order **AFFIRMED.**